Jean Fritzner LaFONTANT, Petitioner,

v.

IMMIGRATION & NATURALIZATION
SERVICE, Respondent.

No. 96–1310.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 21, 1998.

Decided Feb. 10, 1998.

Susan M. Demske, student counsel, Washington, DC, argued the cause for petitioner, with whom Steven H. Goldblatt, appointed by the Court, and Catherine E. Lhamon, Washington, DC, were on the briefs.

Lisa M. Arnold, Attorney, United States Department of Justice, Washington, DC, argued the cause for respondent, with whom Frank W. Hunger, Assistant Attorney General, and Michael P. Lindemann, Assistant Director, were on the brief. Ethan B. Kanter, Attorney, Washington, DC, entered an appearance.

Before: EDWARDS, Chief Judge, WALD and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

Petitioner Jean Fritzner LaFontant, a resident alien living in the United States, brought this action to challenge a deportation order issued by the Bureau of Immigration Affairs ("BIA") based on his multiple convictions for crimes involving moral turpitude, Immigration and Naturalization Act ("INA") § 241(a)(2)(A)(ii), 8 U.S.C.A. § 1251(a)(2)(A)(ii) (1995), and his firearm conviction, INA § 241(a)(2)(C), 8 U.S.C.A. § 1255(a) (1995). LaFontant claims that the BIA abused its discretion by failing to provide him with a waiver of inadmissibility, as provided by INA § 212(c), 8 U.S.C.A. § 1182(c) (1995), or an adjustment of status to lawful permanent resident, as provided by INA § 245(a), 8 U.S.C.A. § 1255(a) (1995). LaFontant further claims that application to LaFontant's petition for review of section 440(a) of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (1996) (codified as amended at 8 U.S.C.A. § 1105a) ("AEDPA"), which divests this court of jurisdiction to review certain deportation orders, would be impermissibly retroactive because it would attach new legal consequences to events completed before the Act's enactment. The government, in turn, argues that section 440(a) deprives this court of jurisdiction over LaFontant's petition for review. It explains that application of section 440(a) to LaFontant's petition is not impermissibly retroactive but is instead a permissible prospective application of a jurisdictional statute. We hold that section 440(a) of the AEDPA is not impermissibly retroactive as applied in this case.[1] We therefore dismiss this case for lack of jurisdiction. We also hold that the fee requirements of the Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104–134, 100 Stat. 1321 (1996), do not apply to LaFontant's petition for review of the BIA's deportation order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Jean Fritzner LaFontant was born in Haiti on October 23, 1957. Transcript at 32, *In re LaFontant*, No. 17–018–333, United States Department of Justice Executive Office for Immigration Review, Immigration Court (Dec. 7, 1995) ("Imm. Ct. Tr."). He entered the United States as a lawful permanent resident in 1966 at the age of eight and has not returned to Haiti since. *Id.* at 32. He does not speak Creole, the primary language spoken in Haiti, and his siblings and parents all live in the United States. *Id.* at 34, 68, 117–18. While residing in the United States, LaFontant has been employed as a bicycle carrier and has filed tax returns for years in which he earned more than $5,000. *Id.* at 36–37, 39–40.

At his deportation hearing on November 20, 1995, LaFontant acknowledged that he had been convicted on December 4, 1981, of the crimes of second degree burglary, grand larceny, and the unauthorized use of a vehi-

---

1. We do not pass on whether section 440(a) may apply, retroactively or otherwise, to bar review of a final order of deportation in a case in which a constitutional infirmity in the deportation proceeding itself is alleged. *See, e.g., Turkhan v. INS*, 123 F.3d 487, 489–90 (7th Cir.1997) (Petitioner claimed that he "received ineffective assistance of counsel in his hearing before the immigration judge," and that "the BIA violated due process when it did not consider his mislabeled brief.").

cle in the District of Columbia. *Id.* at 42. The INS also presented evidence that he had pled guilty on December 4, 1981, to the crimes of receiving stolen property and carrying a dangerous weapon in the District of Columbia and, in 1994, had pled guilty to committing the crime of burglary in Alexandria, Virginia. *Id.* at 49–54.

During his testimony, LaFontant admitted that he had been arrested "roughly 20 or so" times. *Id.* at 42–43. A copy of LaFontant's "rap sheet" was introduced into evidence. *Id.* at 47, 86. The sheet indicated that from 1978 until he was placed into custody pending deportation proceedings, LaFontant had been arrested for forty-five crimes, eleven of which resulted in criminal convictions. *See* Joint Appendix ("J.A.") 147–56.

On November 30, 1994, while LaFontant was on probation, the INS detained him, took him into custody, and ordered him to show cause why he should not be deported. *See* Order to Show Cause and Notice of Hearing, No. A17–018–333, J.A. 112–18. LaFontant contested his deportability but presented no evidence to support his claims. *See* Imm. Ct. Tr. at 4–10. Instead, he relied entirely on his application for discretionary relief under INA § 212(c) (waiver of inadmissibility) and INA § 245(a) (adjustment of status to lawful permanent resident). On December 7, 1995, the Immigration Judge issued a decision holding that LaFontant was deportable under section 241(a)(2)(a)(ii) of the INA for having committed two crimes involving moral turpitude which did not arise out of a common scheme or plan and, under section 241(a)(2)(C) of the Act, for his firearms conviction. *See In re LaFontant,* No. 17–018–333, United States Department of Justice Executive Office for Immigration Review, Immigration Court (Dec. 7, 1995). The Immigration Judge found that LaFontant was statutorily eligible to be considered for a grant of discretionary relief under sections 212(c) and 245(a). *Id.* After weighing the equities, however, the Judge concluded that LaFontant's case did not merit a favorable exercise of discretion. *Id.*

LaFontant filed his notice of appeal to the BIA on December 18, 1995. The BIA, after weighing the factors for and against a grant-

ing of discretionary relief, also concluded that LaFontant was not entitled to discretionary relief in the form of either a waiver of inadmissibility or an adjustment of status. *See In re LaFontant,* No. 17–018–333, United States Department of Justice Executive Office for Immigration Review, B.I.A. (Aug. 22, 1996). Consequently, on August 22, 1996, the BIA dismissed the appeal. *Id.*

On April 24, 1996, while LaFontant's appeal was still pending before the BIA, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996. Section 440(a) of the Act provided that any final order of deportation against an alien who is deportable by reason of having committed a criminal offense shall not be subject to review by any court. Four months later, on August 30, 1996, LaFontant filed his petition for review with this court.

## II. ANALYSIS

### A. *Jurisdiction*

█ Prior to the enactment of the AEDPA, section 106(a)(1)-(6) of the INA authorized the circuit courts of appeals to review final orders of deportation from the BIA. Section 440(a) of the AEDPA amended section 106(a)(10) of the INA to exclude final orders of deportation entered against certain criminal aliens from judicial review. Section 440(a), as amended by section 306(d) of the Illegal Immigration and Immigrant Responsibility Act, provides:

(a) JUDICIAL REVIEW—Section 106 of the Immigration and Nationality Act (8 U.S.C. § 105a (a)(10)) is amended to read as follows:

"(10) Any final order of deportation against an alien who is deportable by reason of having committed a criminal offense covered in section 241(a)(2)(A)(iii), (B), (C), (D), or any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are, without regard to the date of their commission, otherwise covered by section 241(a)(2)(A)(i), shall not be subject to review by any court."

Pub.L. No. 104–132, § 440(a), 110 Stat. 1214, 1276 (1996), as amended by Pub.L. No. 104–208, § 306(d), 110 Stat. 3009 (1996). The

statute did not specify an effective date. It was therefore effective on the date of enactment—April 24, 1996. *See United States v. Shaffer,* 789 F.2d 682, 686 (9th Cir.1986) (" 'In the absence of an express provision in the statute itself, an act takes effect on the date of its enactment.' ") (citation omitted). LaFontant's petition for review was not filed with this court until August 30, 1996.

LaFontant argues that section 440(a) of the AEDPA does not apply to him because such an application would have an impermissible retroactive effect. LaFontant explains that he made strategic choices concerning what to argue at his deportation hearing more than a year before the AEDPA was enacted, when deportable aliens were authorized to seek judicial review. Applying section 440 of the AEDPA to him would therefore attach new legal consequences to events completed before the Act's enactment, in violation of principles established by the Supreme Court in *Landgraf v. USI Film Prods.,* 511 U.S. 244, 270, 114 S.Ct. 1483, 1499–1500, 128 L.Ed.2d 229 (1994). The government, in turn, argues that application of section 440(a) to this case is not impermissibly retroactive, but is instead a permissible prospective application of a jurisdictional statute. The prohibitive nature of the bar holds especially true in this case, the government argues, because LaFontant's petition for review was not filed until four months after the AEDPA's enactment. In addition, the government notes that, with the exception of the Seventh Circuit, every circuit to consider this issue has held that section 440(a) applies to cases pending at the time of its enactment, justifying their immediate dismissal. We similarly find that application of section 440(a) to LaFontant's petition for review is not impermissibly retroactive and that we do not have jurisdiction to hear this case.

■ The Supreme Court established the framework for evaluating retroactivity in *Landgraf v. USI Film Prods.,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). The Court explained that "[w]hen a case implicates a federal statute enacted after the events in suit," absent an express provision regarding the statute's proper reach, "the court must determine whether the new statute would have retroactive effect." *Id.* at 280, 114 S.Ct. at 1505. If the statute would operate retroactively, the court is to presume that the new statute does not apply to that case, "absent clear congressional intent favoring such a result." *Id.* The Court further explained:

> A statute does not operate "retrospectively" merely because it is applied in a case arising from conduct antedating the statute's enactment ... or upsets expectations based in prior law. Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment. The conclusion that a particular rule operates "retroactively" comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event.

*Id.* at 269–70, 114 S.Ct. at 1499 (citations omitted) (footnotes omitted). With regard to jurisdiction in particular, the Court noted that it had "regularly applied intervening statutes conferring or ousting jurisdiction, whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed." *Id.* at 274, 114 S.Ct. at 1501. It continued: "Application of a new jurisdictional rule usually 'takes away no substantive right but simply changes the tribunal that is to hear the case.' . . . . Present law normally governs in such situations because jurisdictional statutes 'speak to the power of the court rather than to the rights or obligations of the parties.' " *Id.* (citations omitted). The Court further explained that "[c]hanges in procedural rules may often be applied in suits arising before their enactment without raising concerns about retroactivity" because "rules of procedure regulate secondary rather than primary conduct." *Id.* at 275, 114 S.Ct. at 1502.

A great deal of debate has centered around the *Landgraf* Court's statement that "[a]pplication of a new jurisdictional rule usually 'takes away no substantive right but simply changes the tribunal that is to hear the case.' " 511 U.S. at 274, 114 S.Ct. at

1502 (citing *Hallowell v. Commons,* 239 U.S. 506, 508–09, 36 S.Ct. 202, 203–04, 60 L.Ed. 409 (1916)). Some have suggested (as does petitioner here) that *"Landgraf* assumes that jurisdictional statutes only effect a change in the tribunal that will hear the case and that the presumption in favor of immediate application is therefore inapposite where the statute's effect is to deprive a party of access to any judicial review at all." *See Kolster v. INS,* 101 F.3d 785, 788 (1st Cir.1996). However, the *Landgraf* Court's citation to *Hallowell v. Commons,* 239 U.S. at 508, 36 S.Ct. at 203, belies such an inference. In *Hallowell,* the Supreme Court upheld the application to pending cases of a statute that deprived the federal district courts of jurisdiction over certain Indian probate disputes and vested "final and conclusive" authority in the Secretary of the Interior. The Court explained that "the reference of the matter to the Secretary ... takes away no substantive right, but simply changes the tribunal that is to hear the case." *Id.* at 508, 36 S.Ct. at 203. We conclude from this that the *Landgraf* Court intended that a statute that takes away jurisdiction from the federal courts and vests exclusive authority in an executive agency to resolve certain disputes be considered a "jurisdictional rule ... 'that simply changes the tribunal that is to hear the case.'" 511 U.S. at 274, 114 S.Ct. at 1502 (citation omitted); *see Kolster v. INS,* 101 F.3d 785, 788 (1st Cir.1996) (concluding that *Landgraf*'s citation to *Hallowell* indicates that jurisdictional change from an Article III court to an administrative decision maker is simply a change in the "tribunal that is to hear the case"); *Hincapie–Nieto v. INS,* 92 F.3d 27, 29 (2d Cir.1996) (same).

The Supreme Court applied and clarified the *Landgraf* framework for determining retroactivity in its recent decision, *Lindh v. Murphy,* —— U.S. ——, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). The *Lindh* Court further elaborated on the distinction between procedural and substantive changes. The Court noted that if a statute is "merely procedural in a strict sense (say, setting deadlines for filing and disposition ... ), the natural expectation would be that it would apply to pending cases." *Id.* at ——, 117 S.Ct. at 2063 (quoting *Landgraf,* 511 U.S. at 275, 114 S.Ct. at 1502) (citations omitted). But, since the Court found that the statutory changes at issue in the case—the "revisions of prior law to change standards of proof and persuasion in a way favorable to the state"—went "beyond 'mere' procedure to affect substantive entitlement to relief," it held that the statute did not fall within the Court's "express (albeit qualified) approval of applying such statutes to pending cases." *Id.* at —— –– ——, 117 S.Ct. at 2063–64. Instead, the Court relied on what it held to be a clear expression of congressional intent that the AEDPA's amendments to chapter 153 not apply to noncapital cases that were already pending when the AEDPA was enacted. The Court explained, "[t]he statute reveals Congress's intent to apply the amendments to chapter 153 only to such cases as were filed after the statute's enactment." *Id.* at —— –– ——, 117 S.Ct. at 2063.

The Court also discussed its position regarding the application of principles of retroactivity to jurisdictional statutes in *Hughes Aircraft Co. v. United States,* —— U.S. ——, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997), which was decided within several days of *Lindh.* The *Hughes* case involved a 1986 amendment to the *qui tam* provision of the False Claims Act. The amendment expanded the circumstances in which private parties could bring suit on behalf of the United States against a person submitting a false claim to the government. The Court said that the mere fact that a statute is jurisdictional in nature must not affect a court's determination of the temporal reach of the statute. The Court rejected the Ninth Circuit's holding that "absent a clear statement of congressional intent, there is a strong presumption in favor of retroactivity for jurisdictional statutes." *Id.* at ——, 117 S.Ct. at 1878. It explained:

The Ninth Circuit simply misread our decision in *Landgraf,* for the only "presumption" mentioned in that opinion is a general presumption against retroactivity. The fact that courts often apply newly enacted jurisdictional locating statutes to pending cases merely evidences certain limited circumstances failing to meet the conditions for our generally applicable presumption against retroactivity, not an exception to

the rule itself, as the United States recognizes. . . . Statutes merely addressing which court shall have jurisdiction to entertain a particular cause of action can fairly be said merely to regulate the secondary conduct of litigation and not the underlying primary conduct of the parties. . . . Such statutes affect only where a suit may be brought, not whether it may be brought at all. . . . [The 1986 amendment] creates jurisdiction where none previously existed; it thus speaks not just to the power of a particular court but to the substantive rights of the parties as well. Such a statute, even though phrased in "jurisdictional" terms, is as much subject to our presumption against retroactivity as any other.

*Id.* at ——, 117 S.Ct. at 1878 (citations omitted).

 As these cases illustrate, the Supreme Court has clearly established the principle that in determining retroactivity, jurisdictional statutes are to be evaluated in the same manner as any other statute. Thus, in order to determine whether a statute applies to a case that was filed prior to passage of the statute, courts must determine whether the statute is "procedural" in nature, or whether it affects "substantive entitlement to relief." *Lindh,* —— U.S. at ——, 117 S.Ct. at 2063. Does it merely "regulate the secondary conduct of litigation" or does it instead affect "the underlying primary conduct of the parties"? *Hughes,* —— U.S. at ——, 117 S.Ct. at 1878. Does the statute speak "just to the power of a particular court" or does it speak to "the substantive rights of the parties as well"? *Id.*

Several circuit courts have considered cases similar to the one at hand, and, with a single narrow exception, all have concluded that applying section 440(a) is not impermissibly retroactive. *See Kolster v. INS,* 101 F.3d 785, 786, 789 (1st Cir.1996) (holding that "section 440(a) does apply to petitions, like Kolster's, which were pending on the date of AEDPA's enactment" because "Kolster's substantive rights, liabilities, and duties are not retroactively impaired by the preclusion of judicial review"); *Hincapie–Nieto v. INS,* 92 F.3d 27, 28 (2d Cir.1996) (holding that

"the AEDPA has repealed the jurisdiction a court of appeals formerly had over petitions for review filed by aliens ... and that the Act's removal of jurisdiction validly applies to petitions filed before the Act's effective date"); *Salazar–Haro v. INS,* 95 F.3d 309, 310 (3d Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1842, 137 L.Ed.2d 1046 (1997) (holding § 440(a) applicable to pending petitions because "unlike situations where retroactivity would affect pre-existing rights, withdrawal of jurisdiction, although realistically disrupting settled expectations, does not preserve pending litigation"); *Williams v. INS,* 114 F.3d 82, 83 (5th Cir.1997) (holding that "[d]espite petitioner's protestations against retroactive application, section 440(a) does apply to her petition, which was filed several days after the effective date of April 24, 1997, and would apply even if her petition had been pending on that date"); *Mendez–Rosas v. INS,* 87 F.3d 672, 676 (5th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 694, 136 L.Ed.2d 617 (1997) (holding that § 440(a) applies retroactively to appeals that were pending before the circuit court when the AEDPA became law because § 440(a) "speaks to the power of the court, rather than to the rights or obligations of the parties"); *Figueroa–Rubio v. INS,* 108 F.3d 110, 112 (6th Cir.1997) (holding that § 440 eliminates the court's jurisdiction to review petitions that were pending at the time the AEDPA was enacted because the statute is jurisdictional and "'jurisdictional statutes "speak to the power of the court rather than the rights or obligations of the parties"'"; also noting that "[a]pplying § 440(a) to petitions for review of deportation orders pending on the date of the AEDPA's passage 'is not retroactive application affecting substantive rights, but is a prospective application of a jurisdiction-eliminating statute'") (citations omitted); *Qasguargis v. INS,* 91 F.3d 788, 789 (6th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1080, 137 L.Ed.2d 215 (1997) (holding that because § 440(a) took effect before the petition for review was filed, the petitioner had no statutory right of review); *Mendez–Morales v. INS,* 119 F.3d 738, 739 (8th Cir.1997) (holding that § 440 "is jurisdictional in nature and therefore must be applied retroactively, in other words, to cases

such as this that were pending on its date of enactment"); *Duldulao v. INS,* 90 F.3d 396, 399 (9th Cir.1996) (holding that the "'presumption against retroactive application of new legislation to pending cases ... does not apply to rules conferring or withdrawing jurisdiction,'" therefore "AEDPA section 440(a), which affects the power of the court rather than the rights and obligations of the parties, ... revokes our jurisdiction to review Duldulao's final order of deportation"); *Fernandez v. INS,* 113 F.3d 1151, 1154 (10th Cir.1997) (rejecting the argument that "section 440(a) should not be applied to petitions pending at the time of its enactment, because it would eliminate judicial review and vest final authority in an administrative agency"); *Boston-Bollers v. INS,* 106 F.3d 352, 354 (11th Cir.1997) (holding that "[a]pplying section 440(a)(10) to petitions for review of deportation orders pending on the date of the passage of the AEDPA is not retroactive application affecting substantive rights, but is a prospective application of a jurisdiction-eliminating statute").[2]

One circuit court has held that section 440(a) of the AEDPA did not apply retroactively to a case in which deportability was conceded before the AEDPA became law and the petitioner would have had at least a colorable defense to deportability. In subsequent cases, however, the court made clear that the holding was limited to the specific circumstances presented in that case. In *Reyes–Hernandez v. INS,* 89 F.3d 490 (7th Cir.1996), the Seventh Circuit held that section 440(a) did not prevent the court from hearing the appeal of a legal resident who had conceded deportability and argued only for discretionary relief in agency proceed-

ings, and whose case was only a few days away from oral argument in the circuit court at the time the AEDPA became effective. The court explained that since Reyes–Hernandez might have contested deportability in agency proceedings had he known that the option of judicial relief would be foreclosed, applying section 440(a) to his pending case would be an impermissible retroactive application of a statute. Immediately after deciding *Reyes–Hernandez,* however, the Seventh Circuit began to limit and clarify its holding in the case. In *Arevalo–Lopez v. INS,* 104 F.3d 100 (7th Cir.1997), the court held that it lacked jurisdiction to review a BIA denial of discretionary relief from deportation to a resident alien whose appeal was pending before the court when the AEDPA was enacted because section 440(a) of that Act divested the court of jurisdiction. The court distinguished the case from *Reyes–Hernandez* on the grounds that "in this case, petitioner contested his deportability at his deportation hearing." *Id.* at 101. The court arrived at the same result in *Chow v. INS,* 113 F.3d 659, 670 (7th Cir.1997) (holding that section 440(a) "does not attach new rights or liabilities to existing actions" and therefore must be applied to pending petition of alien detainee). Thus, even if this court were to adopt the Seventh Circuit's framework, we would not have jurisdiction to review LaFontant's case because he contested, at least formally, his deportability during his agency proceedings. *See* Imm. Ct. Tr. at 5.

■ We join the majority of the circuits in concluding that application of section 440(a) of the AEDPA to a petition for review of a

---

2. All of these decisions took place before the Supreme Court issued its decisions in *Lindh* and *Hughes.* Some of them state that they rely on the presumption, which was explicitly rejected by the Court in *Hughes,* that jurisdictional statutes are to be applied retroactively. *See, e.g., Kolster,* 101 F.3d at 788 ("For jurisdictional statutes, the presumption is in favor of immediate application. ..."); *Mendez–Rosas,* 87 F.3d at 674 ("[I]f the statute addresses jurisdictional rules, we presume that it is to be applied retroactively."); *Duldulao,* 90 F.3d at 399 ("'[The] presumption against retroactive application of new legislation to pending cases ... does not apply to rules conferring or withdrawing jurisdiction.'") (citation omitted). Nonetheless, it appears unlikely

that the results would have been different had the courts had the benefit of the Supreme Court's recent decisions. Indeed, the one circuit court to explicitly consider the impact of the *Lindh* and *Hughes* decisions on its earlier conclusion that section 440(a) applies to pending cases found that the Supreme Court's decisions had no effect. *See Turkhan v. INS,* 123 F.3d 487, 489 n. 3 (7th Cir.1997); *see also Mansour v. INS,* 123 F.3d 423, 424–25 (6th Cir.1997) (restating earlier holding that section 440(a) applies to petitions that were pending when AEDPA took effect without specifically mentioning Supreme Court's intervening decisions in *Hughes* and *Lindh* ); *Okoro v. INS,* 125 F.3d 920, 924 (5th Cir.1997) (same).

BIA deportation order is not impermissibly retroactive. Section 440(a) of the AEDPA falls squarely onto the procedure side of the substance/procedure dichotomy established by the Supreme Court in *Landgraf, Hughes,* and *Lindh* for evaluating whether a statute has impermissible retroactive effects. Although section 440(a) does give LaFontant's agency proceedings greater finality than La-Fontant expected at the time they were held, section 440(a) is not impermissibly retroactive because it does not attach new *substantive* legal consequences to those proceedings. It does not create new legal liabilities, deprive a party of a legal defense he would otherwise have had, or otherwise affect the substantive rights of the parties before this court. Rather, it simply speaks to the power of this court to hear an appeal from an agency decision. Thus, even if we accepted petitioner LaFontant's claim that he would have presented different arguments and evidence during his agency proceedings (though he has not explained exactly what different arguments or evidence he would have offered), this would not be sufficient to establish that section 440(a) has an impermissible retroactive effect. We therefore hold that application of section 440(a) of the AEDPA to LaFontant's petition for review is not impermissibly retroactive, and LaFontant's petition must be dismissed for lack of jurisdiction.

### B. *Fee Requirements of the Prison Litigation Reform Act of 1996*

■ Petitioner argues and the government concedes that the fee requirements of the Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104–134, 100 Stat. 1321 (1996), do not apply to LaFontant's petition for review of the BIA's deportation order because an incarcerated alien facing deportation is not a "prisoner" for purposes of the PLRA. We agree.

The PLRA defines "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C.A. § 1915(h). Although LaFontant was a "prisoner" for purposes of the PLRA when he served time for past convictions, he ceased being a "prisoner" at the time he was released on parole. When LaFontant was detained by the Attorney General under the INA for deportation purposes, he became an "alien detainee," not a "prisoner." *See Ojo v. INS,* 106 F.3d 680, 683 (5th Cir.1997) (holding that "the PLRA does not bring alien detainees within its sweep"). Thus, we hold that the fee requirements of the PLRA do not apply to LaFontant's petition for review.

### III. CONCLUSION

For the foregoing reasons, we hold that application of section 440(a) of the AEDPA, which divests this court of jurisdiction to review certain deportation orders, to petitioner LaFontant's petition for review is not impermissibly retroactive because section 440(a) is entirely procedural in nature and attaches no new substantive legal consequences to events that occurred prior to its enactment. We therefore dismiss this case for lack of jurisdiction. We also hold that the fee requirements of the PLRA do not apply to LaFontant's petition for review of the BIA's deportation order because LaFontant is not a "prisoner" under the PLRA.

*So ordered.*