**INMATES OF D.C. JAIL, Appellees,**

v.

**Delbert C. JACKSON, Appellant.**

**Nos. 97–7234 to 97–7236.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 28, 1998.

Decided Oct. 30, 1998.

Lutz Alexander Prager, Assistant Deputy Corporation Counsel, argued the cause for appellant. With him on the briefs were John M. Ferren, Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel.

Kimberly A. Jackson argued the cause for appellees. With her on the brief were J. Patrick Hickey and Jonathan Smith.

Before: EDWARDS, Chief Judge, WALD and SENTELLE, Circuit Judges.

Opinion for the court filed by Circuit Judge SENTELLE.

Dissenting opinion filed by Circuit Judge WALD.

SENTELLE, Circuit Judge:

In this suit brought on behalf of the inmates of the D.C. jail, the District of Columbia appeals the district court's award of attorney's fees at market rates for work performed after the passage of the Prison Litigation Reform Act ("PLRA"), Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub.L. No. 104–134, 110 Stat. 1321 (1996), codified at 18 U.S.C. § 3626 and 42 U.S.C. § 1997e. We hold that the attorney's fees limitations in the PLRA apply to all work performed after the effective date of the Act, and reverse the district court for the reasons stated below.

## I. Background

The Prison Litigation Reform Act was designed, *inter alia*, to stop frivolous prisoner lawsuits by placing some of the financial burden for litigation on parties and increasing financial and other burdens on prisoners found to have filed meritless cases. The Act also requires attorneys seeking fee awards to show that the hours they expend in successful suits are directly related to the problems they are trying to solve. Another provision, at issue here, places a statutory cap on the hourly fees that may be awarded to the attorneys who litigate prisoner lawsuits, even in cases which ultimately prove to have merit. Section 803(d) of the PLRA provides in relevant part:

(d) Attorney's fees

(1) In any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988 [Section 2 of the Revised Statutes of the United States (42 U.S.C. 1988)] . . . .

. . .

(3) No award of attorney's fees . . . shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of Title 18, for payment of court-appointed counsel.

42 U.S.C. § 1997e(d). This appeal requires us to determine whether the cap on attorney's fees contained in the PLRA should be applied to work performed in these consolidated cases after the Act became effective, when the original fee award was determined a decade before.

The actions in this consolidated appeal, originally filed in 1971, challenged as unconstitutional the conditions at the D.C. jail. The plaintiffs in the two cases, *Campbell v. McGruder* and *Inmates of the D.C. Jail v. Jackson*, challenged the same conditions at the jails and requested the same relief. (The *Campbell* class comprised pre-trial detainees, while the *Inmates* class comprised convicted prisoners.) In 1975, the district court found that the conditions did indeed violate the Constitution because of severe overcrowding, inadequate health care, unsanitary conditions, and unsafe facilities. The district court issued an injunction ordering the District of Columbia to improve the conditions for inmates. Since the original injunction issued, the district court has found a pattern of continuing violations and has repeatedly issued orders attempting to bring conditions at the D.C. jail into compliance with constitutional minimums. The D.C. jail has been so recalcitrant in complying with court-ordered

reforms that the judge whose injunction the plaintiffs' attorneys are monitoring has said that the jail's lack of compliance borders on bad faith. Appellees' Brief at 5 (citing Transcript, Nov. 1, 1994 Hearing, *Inmates of the D.C. Jail v. Jackson* (No.75–1668) at 19–20 (statement of Judge Bryant)). After years of attempting to get D.C. to voluntarily comply, and appointing a Special Master to coordinate with D.C. in an attempt to alleviate conditions, the district court ordered that the jail's medical and mental health services be placed in receivership in 1995. Now, in addition to the attorneys for the plaintiffs, a court-appointed Special Master monitors compliance with existing orders, and the D.C. jail's medical and mental health services remain under the control of a receiver. This appeal involves the award of attorney's fees to plaintiffs' counsel for hours spent monitoring the D.C. jail, attempting to ensure that after twenty-seven years, the District of Columbia ends its continuing violations of the prisoners' civil rights.

## II. Attorney's fees

The award of attorney's fees in this case comes against a complicated statutory backdrop. When the action was originally filed, the *Campbell* plaintiffs included a Section 1983 claim, but dropped it in light of *District of Columbia v. Carter*, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973), which held that Section 1983 did not apply to the District of Columbia. The *Inmates* case was filed after the decision in *Carter*, and did not contain a Section 1983 claim. The attorneys litigated the case pro bono for a decade. It was not until Congress amended Section 1983 in 1979 to cover the District of Columbia (*see* Pub.L. No. 96–170, § 1, 93 Stat. 1284 (1979)) that the attorneys in this case became eligible for fees. Attorney's fees in civil rights actions had been made available by amendment in 1976. The relevant portion of the Civil Rights Attorney's Fees Award Act, Pub.L. No. 94–559, 62, 90 Stat. 2641 (1976) (codified at 42 U.S.C. § 1988(b)), provides that "[i]n any action or proceeding to enforce a provision of [section 1983] the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." The Supreme Court held that section 1988 applied retroactively to all civil rights cases pending at the time of its enactment. *Hutto v. Finney*, 437 U.S. 678, 694 n. 23, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). In 1985, the plaintiffs in *Campbell* and *Inmates* moved to amend their complaints to include Section 1983 claims, and filed for attorney's fees under Section 1988.

In February, 1988, the district court awarded the plaintiffs "reasonable" attorney's fees and set the award at market rates. Multiple payments were made from the District to the plaintiffs' attorneys under that order. This appeal arises because the attorneys now seek a fee award for work performed after the passage of the PLRA. In 1997, the district court awarded attorney's fees for compliance-monitoring work done in 1996 and 1997 at market rates, pursuant to its 1988 order. The district court considered the existence of the PLRA in its order, but found it inapplicable. The district court reasoned that the plaintiffs' attorneys' right to fees vested in 1988 when its first fee award order was issued. In making its determination, the district court applied the test for retroactive application of statutes laid out by the Supreme Court in *Landgraf v. USI Film Products*, 511 U.S. 244, 280, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994):

> When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have a retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

The district court determined that "[a]pplying the PLRA to Plaintiffs' motion for attorneys' fees would contravene the plain lan-

guage of the statute as well as its legislative history and would result in manifest injustice to the plaintiffs." *Campbell v. McGruder*, No. 71–1462, slip op. at 2–3 (D.D.C. filed Oct. 29, 1997) (mem.). The phrase "any action brought by a prisoner" in Section 802 means any action filed after the effective date of the Act, the district court reasoned. The court concluded in particular that applying the PLRA limitations retroactively to these cases, which have been litigated by the same groups of attorneys since 1971, would be "manifestly unjust." *Id.* at 6. The District appeals the fee award.

### III. Retroactivity and the PLRA

■ The inmates urge us to adopt the district court's reasoning that the words "any action brought by a prisoner" mean any action brought after the enactment of the PLRA. That position was adopted by the Sixth Circuit in *Hadix v. Johnson*, 143 F.3d 246 (6th Cir.1998), and was cited with approval by the district court in its memorandum opinion. They point to the juxtaposition of Sections 802 and 803 of the PLRA, and argue that the explicit application of Section 802 to pending actions shows that when Congress intended a section of the Act to apply retroactively, it did so expressly. *See Jensen v. Clarke*, 94 F.3d 1191, 1203 (8th Cir.1996) (contrasting congressional treatment of Section 802 and 803 and finding no intent to create retroactive application of Section 803). They argue that taken together, the plain language, the negative inference to be drawn from the absence of retroactivity provisions, and the legislative history all show that the plain meaning of the statute is that it should apply only to actions arising after the passage of the Act.

At the very least, they argue, should the court find that there is some ambiguity, applying the three-part test of *Landgraf* and *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), requires the court to find in their favor because to do otherwise would result in manifest injustice. The inmates cite *Watson v. Secretary of Health, Education and Welfare*, for the proposition that applying a statute that decreases, rather than increases, attorney's fees to work performed in pending litigation

after the passage of the statute is impermissible. 562 F.2d 386 (6th Cir.1977) (interpreting potentially retroactive fee-capping regulation in black lung cases).

■ We are unpersuaded. We do not find in the statute the plain meaning urged by the prisoners. There is simply nothing in the phrase "any action" that implies, let alone compels, a holding that the statute applies only to actions brought after the passage of the Act. Nor does the language compel resort to legislative history in an attempt to clarify its meaning. We are also not convinced that there is a negative inference to be drawn from a comparison of Sections 802 and 803 of the PLRA. Section 802 of the PLRA amends an entirely different statutory section, 18 U.S.C. § 3626. It is unsurprising that Congress would use differing language to amend different statutory provisions, and the absence of the Section 803 language simply will not bear the burden urged by the inmates. If this case involved a genuine question of retroactivity, that is, if the District were seeking to apply the cap to hours worked before the effective date of the statute, we might find the omission more compelling. But the District advances no such argument, and we join the Eighth Circuit in holding that retroactivity concerns are not implicated when the statute is applied to work performed after April 26, 1996, the date of passage of the PLRA. *See Williams v. Brimeyer*, 122 F.3d 1093, 1094 (8th Cir.1997).

When it is applied to work performed after the effective date of the Act, the PLRA raises none of the retroactivity concerns that require the analysis used by the district court because the statute creates present and future effects on present and future conduct, and has no effect on past conduct. *Compare Jensen*, 94 F.3d at 1203 (holding that the PLRA did not apply to pre-Act work) *with Williams*, 122 F.3d at 1094 (holding that as applied to work performed after the passage of the Act, there is no retroactivity). The fees at issue were earned after the PLRA passed. The PLRA does not in this case upset vested interests because no right to a fee existed until the work was done. Because we find no retroactive effect, we need

not consider the Supreme Court's extensive analysis of when to permit retroactive application. *See Landgraf,* 511 U.S. at 244, 114 S.Ct. 1483; *Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). As the Supreme Court stated in *Landgraf,* normally " 'a court is to apply the law in effect at the time it renders its decision.' " 511 U.S. at 264, 114 S.Ct. 1483 (quoting *Bradley v. School Bd. of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974)).

In *Landgraf,* the Supreme Court noted that it has adopted a functional definition of retroactivity. *See id.* at 268–69 & n. 23, 114 S.Ct. 1483. In *Miller v. Florida,* it stated that "[a] law is retrospective if it 'changes the legal consequences of acts completed before its effective date.' " 482 U.S. 423, 430, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987) (quoting *Weaver v. Graham,* 450 U.S. 24, 31, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981)). To determine if a statute has retroactive effect, the court must decide "whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf,* 511 U.S. at 280, 114 S.Ct. 1483. In determining whether the statute has retroactive effect, the court should consider "fair notice, reasonable reliance, and settled expectations." *Id.* at 270, 114 S.Ct. 1483. In this case, the work at issue was not done until after the passage of the Act. The attorneys did not possess a right to payment until they performed the work for which the fees were awarded, and thus had no settled expectations. Simply put, as applied in this case, the PLRA does not impair rights or upset expectations that did not exist prior to its passage, and could not exist after its passage. Because we hold only that the fee limitations apply to work performed after the passage of the Act, there is no need to continue the retroactivity analysis.

We stress now the limits of our holding. We do not subscribe to the Fourth Circuit's position that the Act applies to fees awarded after the passage of the Act, regardless of whether the work was performed before the statute was enacted. *See Alexander S. v. Boyd,* 113 F.3d 1373, 1386 (4th Cir.1997).

We find persuasive those cases that have held that the PLRA would have retroactive effect if applied to work performed before the Act was passed. *See Glover v. Johnson,* 138 F.3d 229, 250 (6th Cir.1998) ("[A]pplication of the attorney-fee provisions to a fee motion that was pending at the time of the PLRA's passage and that pertained solely to work performed before the statute's passage would undeniably work an impermissible retroactive effect."); *Blissett v. Casey* 147 F.3d 218, 220–21 (2nd Cir.1998); *Cooper v. Casey,* 97 F.3d 914, 921 (7th Cir.1996); *Jensen,* 94 F.3d at 1203. Even the District conceded before this court that under *Landgraf,* applying the PLRA to work performed before April 26, 1996 would upset settled expectations and result in manifest injustice. *See Landgraf,* 511 U.S. at 277, 114 S.Ct. 1483.

## IV. Conclusion

We hold that applying the fee-capping provisions of Section 803 of the PLRA to work performed after April 26, 1996, does not implicate retroactivity concerns. The Act creates present and future effects on conduct performed after the passage of the Act. Section 803 caps attorney's fees earned after the effective date of the Act at 150% of the hourly rate established by 18 U.S.C. § 3006A, and that fee cap applies to the work performed by the attorneys for *Inmates* and *Campbell* which is at issue in this case. We vacate the order of the district court and remand for proceedings in accordance with this opinion.

WALD, Circuit Judge, dissenting:

I disagree with the panel that under *Landgraf* and *Lindh* because "the work at issue was not done until after passage" of section 803(d) of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(d), "[t]he attorneys did not possess a right to payment . . . and thus had no settled expectations [of payment]," Majority Opinion ("Maj. Op.") at 1361. In the panel's view, the mere fact that the services in question had been performed after the fee cap went into effect meant that the lawyers would not be retroactively hurt even though these services were performed on a case initially undertaken long before the

Act. While I agree with the majority that the statutory language is not "plain" as to whether Congress meant to apply section 1997e(d) to pending actions and that the legislative history is ambiguous as well, I do not believe under *Landgraf*'s mandate the panel is entitled to ignore the presumption against retroactive application of a law when "manifest injustice" will result and adopt, as it did, an *a priori* reasoning that imposing the fee cap on any work performed after the Act's passage does not constitute a retroactive application.[1]

The Supreme Court in *Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), cautioned against drawing cursory conclusions about retroactivity based solely on when the conduct immediately affected by the law in question occurred. As to conduct preceding the passage of the law, the Court admonished:

> A statute does not operate "retrospectively" merely because it is applied in a case arising from conduct antedating the statute's enactment ... or upsets expectations based in prior law. Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment. The conclusions that a particular rule operates "retroactively" comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event.

*Id.* at 269–70, 114 S.Ct. 1483 (citations omitted) (footnotes omitted), *quoted in LaFontant v. Immigration & Naturalization Service,* 135 F.3d 158, 161 (D.C.Cir.1998). This caution surely applies as well to conduct occurring temporally after the law is in effect but which is an inextricable part of a course of conduct initiated prior to the law. Acknowledgedly, whether section 1997e(d) "attaches new legal consequences to events completed before its enactment" depends in large part on the answer to the basic question of whether attorney's fee statutes regulate conduct that is merely secondary or ancillary to the parties' conduct, or whether such laws have real impact on the legal rights the parties. *See Landgraf,* 511 U.S. at 275 & n. 29, 114 S.Ct. 1483. This has been said to present a "close[ ] question." *Id.* at 289, 114 S.Ct. 1483 (Scalia, J., concurring). But I believe that the fee-shifting provision under which this case has been litigated, 42 U.S.C. § 1988—which is designed to facilitate the litigation of worthy civil rights violations—gives rise to a strong argument that the triggering event for retroactivity purposes is when the lawyer undertakes to litigate the civil rights action on behalf of the client. Thus a subsequent radical change in the law as to the lawyer's eligibility, if successful, to collect fees computed in a particular manner for his services does indeed constitute "new legal consequences to events completed before ... enactment."

An important characteristic of the Court's retroactivity analysis is that it is capacious and flexible enough to account for the circumstances of each particular case. *See Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 2063, 138 L.Ed.2d 481 (1997) ("In sum, if the application of a term would be retroactive as to Lindh, the term will not be applied, even if, in the absence of a retroactive effect, we might find the term applicable...."); *United States v. Ortiz,* 136 F.3d 161, 166 (D.C.Cir.1998) (circuits addressing potential retroactivity of AEDPA's amendments to section 2255 "share in their approaches [ ] the requirement that the new enactment be retroactive as applied to the particular claim before the court"). Equity and fairness are also to be considered in the analysis. The Court in *Bradley v. School Board of Rich-*

---

1. My own reading of section 1997e(d), like the district court's, would confine it to cases brought after the passage of the Act. I note section 1997e(a) (dealing with exhaustion) speaks of an action which "shall be brought" and although the section most relevant here, 1997e(d)(1), uses "any action brought," I think it strained to conclude that (d)(1) is meant to apply to pending cases while (a) clearly is not. Section 1997e(d)(3) speaks of an award "in an action described in paragraph (1)," a limiting clause that would seem unnecessary if *any* post-Act award in a prisoner case were to be covered by the cap. In any case, I agree basically with *Hadix v. Johnson,* 143 F.3d 246 (6th Cir.1998), construing this section not to apply to cases already ongoing in the courts.

*mond*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), applied a new fee-shifting provision of the Education Amendments of 1972 to a pending school desegregation case based largely on these principles. The district court in *Bradley* had already exercised its equitable authority to award attorney's fees to the plaintiffs in that case, and "as [the Court's] opinion in *Bradley* made clear, it would be difficult to imagine a stronger equitable case for an attorney's fee award than a lawsuit in which the plaintiff parents would otherwise have to bear the costs of desegregating their children's public schools." *Landgraf*, 511 U.S. at 277, 114 S.Ct. 1483.

The plaintiffs make a strong case here that application of section 1997e(d) to work performed after April 24, 1996, is impermissibly retroactive. Section 1988 is a keystone in the enforcement scheme of our civil rights laws. Section 1988 "was no doubt intended to encourage litigation protecting civil rights." *Kay v. Ehrler*, 499 U.S. 432, 436, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991). As stated in the Senate Report accompanying passage of section 1988, "All of these civil rights laws depend heavily on private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain." S.REP. No. 94–1011, at 2 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908, 5910. This surely calls for a closer examination of the effects wrought by section 1997e(d) on the prisoners' legal rights than the majority has undertaken. *See also Hensley v. Eckerhart*, 461 U.S. 424, 444, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1989) (Brennan, J., concurring in part and dissenting in part) ("In enacting section 1988, Congress rejected the traditional assumption that private choices whether to litigate, compromise, or forgo a potential claim will yield a socially desirable level of enforcement as far as the enumerated civil rights statutes are concerned."); *Copeland v. Marshall*, 641 F.2d 880, 895 (D.C.Cir.1980) (parallel fee provision in Title VII must be interpreted broadly because "the prospect of liability for an attorney's fee may help deter discrimination") (footnote omitted); *Ortiz v. Regan*, 980 F.2d

138, 140 (2d Cir.1992) (section 1988 "was designed to allow private individuals a meaningful opportunity to vindicate civil rights violations"); *Seattle School Dist. No. 1 v. State of Washington*, 633 F.2d 1338, 1348 (9th Cir.1980) ("The congressional purpose in providing attorney's fees in civil rights cases was to eliminate financial barriers to the vindication of constitutional rights and to stimulate voluntary compliance with the law.").

The two prisoners' cases before us now have been in litigation for a combined total of 50 years. The prisoners' lawyers became eligible for attorneys' fees when section 1988 was made applicable to the District of Columbia in 1979, and they have consistently received fee awards at market rates for work performed from 1983 onward. Much of this work has grown out of the lawyers' dogged efforts to monitor the District's compliance with a series of stipulated orders that the parties undertook beginning in 1984. The Rules of Professional Conduct, *see* D.C. RULES OF PROF. CONDUCT 1.16(b), preclude lawyers from withdrawing from a case in midstream except under extraordinary circumstances. It follows that once section 1988 was passed, a rational plaintiffs' lawyer anticipating a long and time-intensive case involving lengthy monitoring and compliance negotiations would have had to have expectations that if he prevailed for his clients he would be paid on the reasonable basis set out in that statute. Ethical high-grade representation of a class of civil rights plaintiffs, especially prisoners, does not consist of a series of discrete legal services that can be stopped and started again at any time, but rather a continuous responsibility to see the litigation through to its natural conclusion. In that very real sense, the PLRA has changed the rules of the game midstream and unsettled settled expectations of both lawyers and clients. Thus I agree with the learned district judge that in the absence of a clear congressional intent, the cap should not be applied to post-PLRA work undertaken to complete a legal obligation entered into prior to the law. In sum, application of the PLRA's limitations on attorneys' fees to legal services performed after the PLRA's enact-

ment on a case undertaken prior to the Act does attach retroactively "new legal consequences to events completed before its enactment"—both for the parties and the lawyers. I therefore respectfully dissent.