PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
03/01/2000
THOMAS K. KAHN
CLERK

_____

No. 98-9114

_____

D. C. Docket No. 98-02397-1-CV-GET

NAHRO SUDQI INNAB,

Petitioner-Appellant,

versus

JANET RENO, Attorney General of the United States, DORIS MEISSNER,
Commissioner of the Immigration and Naturalization Service, et al.,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(March 1, 2000)**

Before EDMONDSON and BIRCH, Circuit Judges, and OWENS*, Senior District
Judge.

_____
*Honorable Wilbur D. Owens, Jr., Senior U.S. District Judge for the Middle District of Georgia,
sitting by designation.

BIRCH, Circuit Judge:

Nahro Sudqi Innab appeals the district court order denying his petition for habeas corpus, in which he sought review of his claim that section 440(d) of the Antiterrorism and Effective Death Penalty Act of 1996, codified at 8 U.S.C. § 1182(c) (West 1997) ("AEDPA") should not be applied to his pending application for waiver of deportation under section 212(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(c)( West 1995).[1]

Innab, a native of Jordan, was lawfully admitted into the United States as a permanent resident on December 24, 1971. He is married to a United States citizen and has four children who are also citizens of the United States. On March 20, 1987, Innab pled guilty and was convicted of misdemeanor possession of stolen goods and carrying a concealed weapon (the "1987 conviction"). Innab was convicted of possession of cocaine on May 5, 1992 (the "1992 conviction"). On November 3, 1994, the Immigration and Naturalization Service ("INS") initiated

---

[1] INA §212(c) was subsequently repealed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") § 304(b), "and replaced by new INA § 240A, codified at 8 U.S.C.A. § 1229b (West 1999). [New] INA § 240A consolidates 'suspension of deportation' relief with provisions of the old INA §212(c) to create a new form of relief called 'cancellation of removal.' 'Cancellation of removal' relief is available for aliens whose criminal convictions do not qualify as 'aggravated felonies.' See IIRIRA §304(a), codified at 8 U.S.C.A. § 1229(b) (West 1999). These permanent provisions of IIRIRA apply only to those aliens ordered deported after April 1, 1997, the effective date for IIRIRA, and are not applicable here." Mayers v. I.N.S., 175 F.3d 1289, 1293 n. 3 (11th Cir. 1999).

deportation proceedings against Innab by ordering him to show cause why he should not be deported on the basis of the 1987 and 1992 convictions.[2] Innab conceded his deportability, but filed an application for discretionary relief from deportation under sections 212(c) and (h) of the INA, one day prior to the enactment of the AEDPA.       On October 29, 1996, the Immigration Judge

---

[2]The 1987 conviction was set aside by the Superior Court of Nash County, North Carolina, on July 8, 1999. That court found that because the conviction for carrying a concealed weapon did not necessitate deportation in 1987 and because "the law regarding the effect of the conviction for carrying a concealed weapon as it relates to deportation has changed," "the intent of the plea agreement ha[d] been undermined." The court therefore concluded that the effect of the change in the law as applied to Innab would be ex post facto and a bill of attainder in violation of the United States Constitution. R1-1-Exh. 2.

Similarly, Innab asserts that the 1992 conviction was set aside by the Superior Court of Nash County, North Carolina, on December 22, 1998, on the same basis as the 1987 conviction. See Appellant's Supplemental Brief at 7, Innab v. Reno (No. 98-09114). The government does not dispute the fact that this state court action occurred. See Brief for Respondents at 4, Innab v. Reno (No. 98-09114). However, the 1992 conviction was set aside after the district court entered its decision, and the record was not supplemented with the relevant court order or other evidence of the court's December 22, 1998, action. Innab argues in a supplemental brief that, because all criminal convictions supporting his deportation have been set aside, we should set aside and dismiss the order for his deportation. Innab further asserts that the INS is violating the Tenth Amendment to the United States Constitution by ignoring the state court's decision to set aside his convictions. The government has not addressed these claims, but suggested during oral argument that the reasoning used by the state court to set aside Innab's convictions could implicate the Supremacy Clause of the United States Constitution and that the INS might take the position that, because the purpose of the state court action was to frustrate federal immigration policy, the state court's setting aside of Innab's criminal convictions does not invalidate the basis for his deportation. Moreover, the government suggested that the issues surrounding the state court's decision to set aside Innab's convictions are not properly before this court because Innab has not filed a petition to reopen his deportation hearing and, therefore, not exhausted his administrative remedies. See 8 U.S.C. § 1252(d)(1); Hernandez-Almanza v. U.S. Dept. of Justice, INS, 547 F. 2d 100, 103 (9th Cir. 1976). Because the legal arguments and underpinning facts regarding these issues have not been fully developed and because we find that the district court has jurisdiction to consider Innab's habeas petition, we do not rule on these issues. We, instead, leave these issues for consideration by the district court on remand.

3

denied Innab's plea for statutory relief under INA § 212(c) and ordered that he be deported. See R1-1-Exh. 3. On appeal, the Board of Immigration Appeals ("BIA") found that Innab was "statutorily ineligible" for relief from deportation under INA § 212(c) because AEDPA § 440 (d) pretermitted his application for relief.[3] R1-1-Exh. 4. Innab filed a petition for review of the BIA's decision with this Court which was dismissed on July 16, 1998, for lack of jurisdiction according to the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), §§ 309 (c)(4)(E) and (G), 8 U.S.C.A. § 1229(a). See R1-3-Exh.1.

Subsequently, Innab filed a petition for writ of habeas corpus requesting that the district court stay Innab's deportation and release him under reasonable conditions while the district court reviewed the BIA's decision. See R1-1-6. Further, Innab asserted that, because the BIA wrongly and retroactively applied AEDPA § 440(d) to his case, the district court should vacate the BIA's order of deportation, order the INS to resume Innab's deportation proceedings, and

---

[3]"Under the law in effect prior to the enactment of AEDPA, certain aliens, otherwise determined to be deportable, were entitled to apply for waiver of deportation under INA § 212(c). The granting of a waiver was discretionary act of the Attorney General, or her representatives, that would allow the alien to remain in the United States. The alien presented his application to the Immigration Judge ("IJ"), who had discretion to waive the deportation of an alien based upon such factors as time spent and family ties in the United States and restitution for criminal activity. Section 440(d) of AEDPA greatly expanded the category of criminal convictions that would render an alien, including [Innab], ineligible to apply for relief under INA § 212(c). See AEDPA § 440(d), codified at 8 U.S.C.A. § 1182(c) (West Supp. 1997)." Mayers, 175 F.3d at 1292-93.

4

adjudicate the applicability of INA § 212(c) without regard to AEDPA § 440(d) or IIRIRA § 309. See id. at ¶¶ 16, 22. On October 28, 1998, the district court denied Innab's motion to stay his deportation and dismissed his petition for writ of habeas corpus, reasoning that it lacked jurisdiction over the matter according to the new INA § 242(g), 8 U.S.C. § 1252 (g). See R1-6-2. Innab appeals this order.

We review de novo issues of subject matter jurisdiction. Tefel v. Reno, 180 F.3d 1286, 1295(11th Cir. 1999), reh'g and reh'g en banc denied, ___ F.3d ___ (11th Cir. Oct. 6, 1999).

Recently, we were presented with a markedly similar set of circumstances in Mayers v. Reno, 175 F.3d 1289 (11th Cir. 1999).[4] In Mayers, we considered the

---

[4]We note that both Tefel, 180 F.3d at 1302 (concluding that IIRIRA § 309(c)(5)'s application of INA § 244A(d)(1)'s stop-time rule to aliens in deportation proceedings prior to the enactment of the IIRIRA is not retroactive), and Mayers, 175 F.3d at 1303 (concluding that applying AEDPA § 440(d) to pending applications for a § 212(c) waiver would have retroactive effect because it "'attaches a new disability' and imposes additional burdens on past conduct") (quoting Landgraf v. USI Film Products, 511 U.S. 244, 269, 114 S. Ct. 1483,1499, 128 L. Ed. 2d 229 (1994)), discuss the retroactive application of changes in the INA via the IIRIRA and AEDPA, respectively, and reach opposite conclusions. However, the disposition of both cases hinges on the first step in the Landgraf analysis and, therefore, the discussions regarding retroactive effect are not applicable here. See Tefel, 180 F.3d at 1302 ("No one disputes that, in enacting NACARA § 203(a)(1), Congress mandated the application of the stop-time rule to aliens against whom deportation proceedings began prior to IIRIRA. Therefore, even assuming that NACARA § 203(a)(1) constituted the retroactive application of a statutory provision, there would be [no] need for this Court to apply the judicial presumptions against retroactive application of new statutes because Congress expressly provided for this 'retroactive' application."); Mayers, 175 F.3d at 1303, 1304 (noting that having "established that Congress intended only prospective application of AEDPA § 440(d),... [we] need not reach the second step of the Landgraf analysis," whether applying AEDPA § 440(d) to the petitioners would have retroactive effect and that our findings regarding congressional intent meant that "we did not reach petitioners' claim that AEDPA § 440(d) violates the Equal Protection Clause").

5

habeas corpus petitions of two aliens, Efrain Gutierrez-Martinez and Trevor

Mayers, claiming that section 440(d) of the AEDPA should not have been applied

to their pending applications for waiver of deportation under INA § 212(c). See

175 F.3d at 1291-92. As with the case at bar, the claims of both petitioners in

Mayers were governed by the transitional rules of the IIRIRA. See 175 F.3d at

1297.[5] There we applied the Supreme Court's decision in Reno v. American-Arab

Anti-Discrimination Committee, 525 U.S. 471, 119 S. Ct. 936, 142 L. Ed. 2d 940

(1999) (narrowing the application of the jurisdiction-excluding provision of new

INA § 242(g), 8 U.S.C.A. § 1252(g), to "three discrete actions that the Attorney

General may take: her 'decision or action' to 'commence proceedings, adjudicate

cases, or execute removal orders'") and concluded that the new INA § 242(g)'s

exclusive jurisdiction provision does not apply to the review of final orders of

deportation cases governed by the transitional rules of the IIRIRA and, therefore,

does not eliminate the district court's subject matter jurisdiction. See Mayers, 175

F.3d at 1297. We further concluded that "habeas corpus jurisdiction under 28

_____

[5]It is undisputed that Innab's claim falls under the IIRAIRA's transitional rules because he was placed into deportation proceedings commenced prior to April 1, 1997, and became final after October 30, 1996. See Mayers, 175 F.3d at 1293 n.4 (explaining that "AEDPA § 440(a) governs deportation orders that became final before October 31, 1996. Orders that became final after this date, but before April 1, 1997, are governed by IIRIRA's transitional rules (set forth in § 309(c) and not codified in the United States Code). All proceedings that commence after April 1, 1997, are governed by IIRIRA's permanent rules, set forth in new INA § 242 and codified at 8 U.S.C.A. § 1252 (West 1999).").

U.S.C. § 2241 [had] survived the enactment of AEDPA." Mayers, 175 F.3d at 1299. As the appellee concedes, Mayers controls the question of whether the district court had jurisdiction under 28 U.S.C. § 2241 to review Innab's final order of deportation. Accordingly, we find that the district court erroneously concluded that it lacked subject matter jurisdiction over Innab's petition for habeas corpus.

In Mayers, we also addressed the issue of whether AEDPA § 440(d) should be applied retroactively and determined "that Congress intended that AEDPA's § 440(d)'s amendment of INA § 212(c) should not apply to pending cases." 175 F.3d at 1304. The government urges that we reconsider this holding in light of two recent Supreme Court decisions – Martin v. Hadix, 527 U.S. 343, 119 S. Ct. 1998, 144 L. Ed. 2d 347 (1999) (limiting the use of the "negative inference" when interpreting congressional intent regarding the retroactive application of a statute to the comparison of chapters within a statute that address similar issues), and INS v. Aguirre-Aguirre, 526 U.S. 415, 119 S. Ct. 1439, 143 L. Ed. 2d 590 (1999) (finding that Chevron deference should be given to the BIA's interpretation of a "serious nonpolitical crime" when applying that exception in order to deny an illegal immigrants application for withholding deportation under 8 U.S.C. § 1253(h)) . Having reviewed these intervening decisions, we find that the conclusion we

reached in <u>Mayers</u> and its application here are consistent with the requirements and

added guidance they provide.[6]

---

[6]In <u>Hadix</u>, the Supreme Court indicated that, when interpreting whether Congress intended for a statute to apply retroactively, the "negative inference" argument can only be used when comparing statutory sections which address similar subject matters. 119 S.Ct. at 2005 (finding that a negative inference does not arise from the silence of one chapter of a statute when compared to the inclusion of explicit language in another section making that section applicable to pending cases if the two sections address "wholly distinctive subject matters"). We did not rely solely upon the "negative inference" argument to reach our conclusion in <u>Mayer</u>. Instead, we carefully reviewed the legislative history of the AEDPA and found that it to be substantial evidence of Congress's intent, not "an ambiguous act of legislative drafting." <u>Compare</u> <u>Hadix</u>, 119 S. Ct. at 2005 (discussing respondents' claim "that when the attorney's fees limitations were originally drafted, they were in the section that became § 802 of the PLRA [Prison Litigation Reform Act of 1995], which at the time contained language making them applicable to pending cases. Later, the fees provisions were moved to what became § 803 of the PLRA, a section without language making them applicable to pending cases) with <u>Mayers</u>, 175 F.3d at 1303-04 (discussing the documented legislative history of the AEDPA: "The original Senate version of the bill that became AEDPA contained an explicit instruction that the provision, later structured as AEDPA § 440 (d), would apply to pending cases. The House version of that same provision, in contrast, was prospective. When the bill emerged from the conference committee, the original Senate language making § 440(d)'s restrictions retroactive had been removed." (citations omitted)).

In <u>Aguirre-Aguirre</u>, the Supreme Court reiterated its holding in <u>INS v. Cardozo-Fonseca</u>, 480 U.S. 421, 107 S. Ct. 1207, 94 L.Ed.2d 434 (1987) "that the BIA should be accorded <u>Chevron</u> deference as it gives ambiguous statutory terms 'concrete meaning through a process of case-by-case adjudication,'" 119 S. Ct. at 1445 (citation omitted), and instructed that in so doing "the court should have asked whether 'the statute is silent or ambiguous with respect to the specific issue' before it; if so, 'the question for the court [was] whether the agency's answer is based on a permissible construction of the statute.'" <u>Id</u>. (citations omitted) (brackets in original). In <u>Mayer</u>, we determined that if the BIA's decision regarding the effective date of the AEDPA was accorded <u>Chevron</u> deference, we must, nonetheless, reverse the BIA's retroactive application of §440(d) because it violates congressional intent, as determined by a review of the legislative history of the AEDPA. 175 F.3d at 1302-04. <u>See</u> <u>Chevron, U.S.A., Inc. v. Natural Resources Defense</u>, 467 U.S. 847, 846, 104 S. Ct. 2778, 2783, 81 L. Ed. 2d 694 (1984) ("'If [an executive department's construction of a statutory scheme it is entrusted to administer] represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, we should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned.'") (quoting <u>United States v. Shimmer</u>, 367 U.S. 374, 382-83, 81 S. Ct. 1554, 1560-61, 6 L. Ed. 2d 908 (1961))), <u>id</u>. at 846, 843 n.9, 104 S. Ct. at 2783, 2781-82 n.9 ("The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear

Accordingly, we REVERSE the district court's order denying Innab's petition for habeas corpus on the grounds that it lacked subject matter jurisdiction and we REMAND Innab's case to the district court for reconsideration of his petition for habeas corpus relief pursuant to § 2241 in light of this opinion.

---

congressional intent" (citations omitted)); see also Regions Hosp. v. Shalala, 522 U.S. 448, ___, 118 S. Ct. 909, 914-915, 139 L. Ed. 2d 895 (1988) ("If, by 'employing traditional tools of statutory construction,' we determine that Congress' intent is clear, 'that is the end of the matter'") (quoting Chevron, 467 U.S. at 842-43, 104 S. Ct. at 2781 ). Moreover, we believe that the question regarding the effective date of § 440(d) of the AEDPA and whether it should be applied retroactively to pending cases that was addressed in Mayers should be distinguished from the issue  facing the court in Aguirre-Aguirre, what is the best interpretation of the term "serious nonpolitical crime" as used within INA. Cf. Cardoza-Fonesca, 480 U.S. at 448, 107 S. Ct. at 1221 (distinguishing between the "narrow legal question" of whether the standards under INA §§ 243(h) and 208(a) are the same as "well within the province of the judiciary" and "the question of interpretation" of some obviously ambiguous term "which can only be given concrete meaning through a case-by-case adjudication" and which is entitled to deference).