**Valerie WEST, et al.**

v.

**John R. MANSON, et al.**

**No. Civ. 283CV366(RNC).**

United States District Court, D. Connecticut.

July 12, 2001.

Lynn Cochrane, Andrew P. Gaillard, Toya Alek Graham, and Philip Tegler, for plaintiff.

Steven Strom and Margaret Chapple, for defendant.

## RULING ON APPLICATION FOR ATTORNEYS' FEES AND COSTS

FITZSIMMONS, United States Magistrate Judge.

On September 29, 2000, this Court ruled on plaintiffs' Application for Fees and Costs, denying the motion without prejudice to a supplemental application that addressed the issues and questions raised by the Court. [Doc. # 401]. Plaintiffs filed a supplemental application on December 5, 2000.[1] [Doc.## 404, 405].

For the reasons that follow, plaintiff's motion is granted. The Court awards attorneys' fees to the Connecticut Civil Liberties Union Foundation in the amount of $67,445.88 and costs in the amount of $1,044.

The Court presumes familiarity with this case and the background relevant to this motion, as set forth in the initial ruling on fees and costs. [*See* Doc. # 401]. Accordingly, this ruling will not repeat prior findings and arguments and will only address the issues and questions raised by this supplemental application.

*Entitlement to Attorneys' Fees and Costs*

■ It is well established that prevailing civil rights plaintiffs are entitled to reasonable attorneys' fees for post-judgment monitoring. *See Martin v. Hadix,* 527 U.S. 343, 119 S.Ct. 1998, 144 L.Ed.2d 347 (1999) (awarding attorneys' fees for post-judgment monitoring services performed after the effective date of the Prison Litigation Reform Act); *Wilder v. Bernstein,* 975 F.Supp. 276 (S.D.N.Y.1997) (finding post-judgment monitoring of consent decree is compensable under § 1988); *Vecchia v. Town of North Hempstead,* 927 F.Supp. 579, 581 (E.D.N.Y.1996) ("Services rendered in monitoring compliance under a consent decree are reimbursable."); *New York Ass'n for Retarded Children v. Carey,* 711 F.2d 1136 (2d Cir.1983); *Pennsylvania v. Delaware Valley Citizens' Council,* 478 U.S. 546, 559, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) ("post-judgment monitoring of a consent decree is a compensable activity for which counsel is entitled to a reasonable fee.").

In ruling on the initial application for fees and costs, the Court directed the parties as follows:

Defendants seem to argue that plaintiffs are not "prevailing parties" under § 1988 despite the broad injunctive relief provided by the consent judgments, the subsequent invocation of the Court's jurisdiction, and the extensive monitoring and enforcement efforts since 1993. Plaintiffs have apparently already re-

---

1. Considered were plaintiff's Motion for Supplemental Application for Attorneys' Fees and Costs, [Doc. # 404]; Memorandum in Support [Doc. # 405]; Affidavit of Thomas C. Clark [Doc. # 406]; Affidavit of Philip D. Tegler [Doc. # 407]; Defendants' Memorandum in Opposition [Doc. # 409]; Plaintiffs' Reply Brief [Doc. # 412].

ceived attorneys' fees in connection with the settlement of the case and successfully sought additional fees on December 3, 1993, for work that resulted in the entry of a supplemental consent judgment. [Doc.## 287, 289]. The parties have not addressed the significance of these prior fee awards and whether they were based on agreements or a prior finding of the Court that plaintiffs were "prevailing parties." The parties should review documents ## 287 and 289 before submitting additional arguments. If the Court made a finding in 1993, the parties should address whether that finding is binding only on the issue of fees for the settlement/consent decrees or relevant to the application for fees for subsequent monitoring activity. If no finding has been made, the parties should brief the Court accordingly.

[Doc. # 401 at 5–6].

The Court finds that plaintiffs are prevailing parties and are entitled to attorneys' fees for monitoring activities. The history of the case supports this conclusion. In 1988, Judge Nevas found plain-

**2.** It is not entirely clear whether the fees awarded included time for monitoring activities as well as hours spent leading up to the 1987 consent decree. *See* Doc. # 155.

**3.** The Court finds it a difficult duty to have to rule on fees in this matter where it has personally observed the efforts of counsel, the parties, and the monitors in resolving hundreds of issues and bringing about remarkable improvements at the Connecticut Correctional Institution in Niantic.

. . . . .

A delicate balancing of competing and conflicting interests is necessary in determining fair and reasonable compensation for plaintiffs' counsel in circumstances where qualified monitors have been court-appointed to ensure that the provisions of the Consent Judgments are implemented.

On the other hand, the monitors are paid all their fees and expenses by the State to

tiffs "clearly prevailed" and awarded fees in the amount of $48,877.37 and costs in the amount of $14,856 for work and expenses incurred over three years.[2] [Doc. # 155 at 3]. In 1993, Judge Zampano awarded attorneys' fees in the amount of $33,402.75 and costs in the amount of $1,103.10 for plaintiffs' counsel's monitoring activities. *See* Doc. # 287. Judge Zampano carefully considered counsel's role, as well as the fact that defendants were paying for the monitoring panels under the consent decrees.[3]

The Court compensated plaintiffs' counsel for

time expended in the preparation of and services rendered in the following: conferences, meetings, telephone calls, correspondence and other contacts with the Court; conferences, meetings, telephone calls, correspondence and other contacts with monitors and counsel for the defendants; and the preparation and pursuit of the request for attorneys' fees.

[Doc. # 287 at 3].

 This list of compensable monitoring activity is not exhaustive. Plaintiffs periodically review compliance with the court orders and judgments throughout this case. Because the monitors have faithfully performed their assignments, the State contends it is unfair and unnecessary to pay plaintiffs' counsel "to monitor the monitors."

The Court agrees that, in special circumstances of this case, it is not counsel's role either to usurp the duties of the monitoring panels or to track the actions of the panelists so closely that there is a duplication of time, effort, and expense.

**On the other hand, there is merit to the plaintiff's claim that counsel's duties and obligations to their clients do not cease when monitors are appointed to oversee Consent Judgments in class action lawsuits. Counsel must be ever vigilant after Consent Judgments are entered to ascertain that the monitors carefully enforce the mandates prescribed in those court orders.**

[Doc. # 287 at 2–3 (emphasis added)].

argue, and the Court agrees, that "prevailing parties in the civil rights litigation as a whole are entitled to § 1988 fee compensation for work done in protecting and enforcing their favorable judgment, even where those efforts are not entirely successful, provided that the work was reasonably necessary and appropriate and contributed to some degree to the goal of ensuring the defendants' compliance with the judgment." [Doc. # 405 at 4–5]; *Pennsylvania v. Delaware Valley Citizens' Council,* 478 U.S. 546, 558–59, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) ("In a case of this kind, measures necessary to enforce the remedy ordered by the District Court cannot be divorced from the matters upon which Delaware Valley prevailed in securing the consent decree.").

The Court has carefully reviewed the time entries of plaintiffs' counsel and finds that the categories of monitoring activities entered are compensable monitoring activity.[4] The Court finds the entries are sufficiently specific, reflect sound billing judgment and reflect work reasonably necessary and appropriate which contributed in some degree to the goal of ensuring the defendants' compliance with the consent decrees. [Doc. # 407, Aff. Att. Tegler]; *see Pennsylvania v. Delaware Valley Citizens' Council,* 478 U.S. 546, 558–561, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986). Further, the Court credits the representation of plaintiffs' counsel that the time entries were made contemporaneously with the work performed and "all entries are for activities directly related to monitoring the consent decree." [Doc. # 407, Aff. Att. Tegler ¶ 5; Doc. # 412 at 1–2]. The Court bases these conclusions on its significant involvement in this case

since 1993 and its familiarity with the efforts of plaintiffs' counsel to monitor the consent decrees.

*Laches/Prejudice*

■ Defendants argue that the Court should deny the request for fees and costs due to the unreasonable delay in bringing this application for fees from 1993 through 2000. The Court agrees with defendants that, in the future, plaintiffs' fee applications should be brought at shorter, more reasonable intervals, such as on an annual or a semi-annual basis. [Doc. # 409 at 20]. However, defendants have not shown definitive prejudice sufficient to justify denial of the fee application. Defendants are well aware that the CCLUF has sought fees in this case and in numerous other cases to which the state is a party. Finally, Assistant Attorney General Strom is the only person, other then this Judge, to have been involved in this case for the entire period covered by this fee application. [Doc. # 281].

*Current v. Historical Rates*

■ Plaintiffs seek current hourly rates for the work performed between 1993 and 1996, the effective date of the PLRA. Plaintiffs cite *Gierlinger v. Gleason,* which states "in order to provide adequate compensation where the services were performed many years before the award is made, the rates used by the court to calculate the lodestar should be current rather than historic rates." 160 F.3d 858, 882 (1998) (Internal quotation marks and citations omitted). *Gierlinger* also states that,

---

4. Such monitoring activities include, but are not limited to, time spent consulting with clients, reviewing inmate correspondence, reviewing inmate records, traveling to Niantic; conferring related to monitoring of the con-

sent judgments; preparing materials, and reporting to the Court concerning compliance issues; negotiating sessions with defendants regarding compliance issues; conferring between plaintiffs' counsel.

[t]he Court is not necessarily required, however, to award attorneys' fees based on current hourly rates when the delay is due in whole or in substantial part to the fault of the party seeking fees. *See e.g., Sands v. Runyon,* 28 F.3d at 1334; *Saulpaugh v. Monroe Community Hospital,* 4 F.3d at 146. Though "it would be harsh to deny counsel some allowance for the time value of attorney's fees delayed by considerations of judicial administration," *Sands v. Runyon,* 28 F.3d at 1334, there is no inequity in requiring counsel to bear the cost of delay caused by him or by his client.

160 F.3d at 882. Plaintiffs have offered no justification for waiting up to seven years to file a fee petition. Under these circumstances, the Court will apply a reasonable historic rate. Defendants do not challenge the 1993–96 rates provided by Attorney Thomas C. Clark in his affidavit. [Doc. # 406; Doc. # 409 at 23–24]. Attorney Clark avers that the historic rate generally charged during the relevant pre-PLRA period by partners with 10 to 15 years of experience was in the range of $175 to $200 per hour. After careful consideration, the Court awards attorneys' fees as follows.

Philip D. Tegler

| 11/25/95–4/10/96 | 10.15 hrs × $200/hr | $ 2,030.00 |
| 5/10/96–1/14/00 | 86.30 hrs × $67.50/hr | $ 5,825.25 |
| | | $ 7,855.25 |

Martha Stone

| 3/24/93–7/7/95 | 32.50 hrs × $200/hr | $ 6,500.00 |
| Travel: | 12.20 hrs × $125/hr | $ 1,525.00 |
| | | $ 8,025.00 |

Ann Parent

| 2/5/96–4/25/96 | 42.80 hrs × $200/hr | $ 8,560.00 |
| 4/26/96–11/7/98 | 73.70 hrs × $67.50/hr | $ 4,974.75 |
| | | $13,534.75 |

JoNel Newman

| 1/4/93–9/29/95 | 83.30 hrs × $200/hr | $16,660.00 |
| Travel: | 11.60 hrs × $100/hr | $ 1,160.00 |
| | | $17,820.00 |

Lynn Cochrane [5]

| 6/24/99–12/9/99 | 50.50 hrs × $67.50/hr | $ 3,408.75 |

Katerina Rohner

| 4/23/97–11/10/97 | 33.40 hrs × $67.50/hr | $ 2,254.50 |

Sarita Ordonez

| 4/24/97–8/5/97 | 3.5 hrs × $67.50/hr | $ 236.25 |

Regina Mercedez

| 4/12/93–3/28/95 | 215.3 hrs × $65/hr | $13,994.50 |
| Travel | 9.75 hrs × $32.50/hr | $ 316.88 |
| | | $14,311.38 |

| **TOTAL** | | $67,445.88 |

*PLRA*

 The Court has considered the parties' arguments and additional briefing on the question of whether the PLRA permits recovery of attorneys' fees for post-judgment monitoring and enforcement of consent decrees and concludes that attorneys' fees are recoverable. *Martin v. Hadix,* 527 U.S. 343, 360, 119 S.Ct. 1998, 144 L.Ed.2d 347 (1999). Addressing defendants' argument, this Court finds that plaintiffs are prevailing parties for purposes of claiming attorneys' fees under § 1988, *see* Doc. # 155, and that plaintiffs have previously recovered fees for post-judgment monitoring prior to the enactment of the PLRA. *see* Doc. # 287; *see Martin,* 527 U.S. at 348–61, 119 S.Ct. 1998.

The Court finds that the maximum PLRA rate of $67.50 per hour is the most appropriate and reasonable rate to compensate counsel.

Finally, the Court has considered *Giles v. Coughlin,* No. 95 CIV. 3033, 1999 WL 1225248, *2 (S.D.N.Y. Dec. 21, 1999) (declining to award attorneys' fees under the

---

**5.** Attorney Lynn Cochrane works for Greater Hartford Legal Assistance. The attorneys' fees attributable to her work will be paid by CCLUF to GHLA. [Aff. Tegler 2/9/00 ¶ 6].

PLRA for an emergency application for a modification of the consent decree where court found that termination of the consent decree was mandated and "the prospective relief granted under the March 6 consent decree was not longer necessary to correct a current or continuing violation of a federal right because the 1991 medical keeplock policy was not longer in effect and the conditions of the TB hold did not violate the Eighth Amendment."), and *Muhammad v. Coughlin,* No. 91 CIV 6333, 1998 WL 382000 (S.D.N.Y. Jul. 9, 1998) (declining to reach the question of whether the PLRA provides recovery for monitoring activity), both cited by defendants, and find nothing in these cases which suggests that compensation cannot or should not be awarded under the circumstances of this case.

## CONCLUSION

Accordingly, plaintiffs' Motion for Attorneys' Fees and Costs [**Doc. # 404**] is **GRANTED**. Defendants will pay attorneys' fees to the Connecticut Civil Liberties Union Foundation in the amount of **$67,445.88** and costs in the amount of **$1,044.**[6]

Plaintiffs will file a motion for fees incurred in preparing and litigating these fee petitions within fourteen (14) days. *See Hernandez v. Kalinowski,* 146 F.3d 196, 199 (3d Cir.1998) ("fees on fees" is included within the meaning of fees "directly and reasonably incurred in proving an actual violation of the plaintiff's rights" under PLRA § 803(d), 42 U.S.C. § 1997e(d)(1).).

Plaintiffs will file a petition for fees and costs annually, on or before January 15 for the previous calendar year, unless defendants request a different schedule.

---

**6.** The Court previously reviewed plaintiffs' request for costs and made a preliminary finding on costs. [Doc. # 401 at 18–19]. The

This is not a recommended ruling. This is a ruling on attorneys' fees and costs which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 6(a), 6(e) and 72(a); and Rule 2 of the Local Rules for United States Magistrate Judges. As such, it is an order of the Court unless reversed or modified by the district judge upon motion timely made.

---

parties did not provide any further argument on costs in the supplemental briefing.