Denise CASSESE f/k/a Denise Caligiuri, George Scott Rush, Richard Schroer and William Bloom, individually and on behalf of all others similarly situated, Plaintiffs,

v.

WASHINGTON MUTUAL, INC.; The Federal Deposit Insurance Company, in its capacity as receiver for Washington Mutual Bank, such entity having incorporated former defendants Washington Mutual Bank, FA and Washington Mutual Home Loans, Inc.; and Washington Mutual Bank, FSB, Defendants.

No. 05–cv–2724 (ADS)(ARL).

United States District Court, E.D. New York.

Signed June 23, 2014.

Tusa, P.C., By Joseph S. Tusa, Esq., of Counsel, New York, NY, Lowey Dannen-

berg, Bemporad, Selinger & Cohen, P.C., By Peter D. St. Philip, Jr., Esq., of Counsel, White Plains, NY, for Plaintiffs.

Weil, Gotshal & Manges, LLP, By John Peter Mastando, Esq., Vanessa W. Chandis, Esq., of Counsel, New York, NY, for Defendant, Washington Mutual Inc. Liquidating Trust 767 Fifth Avenue.

## DECISION AND ORDER

SPATT, District Judge.

This motion for a supplemental award of attorneys' fees arises from approval of a settlement ending more than six years of class action litigation against the Defendant Washington Mutual, Inc. ("WMI") for alleged violations of federal and state law in charging prepayment fees relating to residential mortgage and home equity loans. Familiarity with the numerous prior orders is presumed.

On February 15, 2011, a Settlement Agreement (the "Agreement") was filed with the Court. As part of the Agreement, the Settlement Class Members agreed to relinquish any claims against WMI. For its part, WMI agreed to deposit a Gross Settlement Fund in the amount of Thirteen Million Dollars ($13,000,000) from its bankruptcy estate into a Settlement Account; provide notice to class members; and implement a claims process and distribution as described in Article 6 of the Settlement Agreement.

In addition, WMI agreed to pay an estimated $5.7 million to notice and administer the Settlement, including the fees charged by the Settlement Administrator, the ultimately-appointed Kurtzman Carson Consultants, LLC (the "Settlement Administrator"), to distribute and publish the Court-approved notices to Class Members. Also, WMI agreed to withdraw its objection to the claims filed by the named-Plaintiffs and the Class in WMI's bank-ruptcy proceeding. The Plaintiffs and the Class, in turn, agreed to settle their bankruptcy claims for the Settlement consideration paid by WMI.

Under the terms of the Settlement Agreement, Class Counsel was entitled to attorneys' fees in the "total maximum [amount] of Three Million and Nine Hundred Thousand Dollars ($3,900,000) or any lesser sum that the District Court awards Class Counsel and Named Plaintiffs' counsel for their services in representing the Class." The Agreement, at § 1.3. WMI agreed not to dispute an award of attorneys' fees "to the extent that the request [did] not exceed thirty (30%) of the Gross Settlement Fund, including any interest accruing on such Gross Settlement Fund." *Id.* at § 3.2(A). The Attorneys' Fees were to be paid solely from the Gross Settlement Fund, along with the award of Attorneys' Expenses, Incentive Awards and the Settlement Account Payment. Any remaining amount would constitute the "Net Settlement Fund," from which the Claim Payments to Claiming Class Members who filed timely, valid Proof of Claim Forms would be made. *See id.* at §§ 1.25, 3.2, 6.6.

Section 6.6 of the Settlement Agreement provided that, if any funds remain in the Net Settlement Fund after the payment of (1) Incentive Awards to Named Plaintiffs; (2) the Attorneys' Fees and Attorneys' Expenses; (3) Settlement Account Payment; and (4) all Claim Payments issued to Claiming Class Members based on timely, valid Proof of Claim Forms (which have either been cashed by such Claiming Class Members or have expired by their terms), the Settlement Administrator shall distribute all such funds remaining in the Net Settlement Fund to WMI, which funds shall be returned to WMI's bankruptcy estate for subsequent distri-

bution in accordance with [WMI's chapter 11 plan]. *Id.* at § 6.6. Furthermore, WMI and the Settlement Class agreed that, "[u]pon the completion of the claims process and distribution, as described in Article 6, [which claims process and distribution has been completed] ... any remainder in the Net Settlement Fund shall be immediately payable by the Settlement Administrator to WMI, or its successor or assigns, without further order of the District Court." *Id.* at § 3.3(C).

The Agreement also provided that, except for limited circumstances not applicable here, the Gross Settlement Fund was not to be paid out until after the "Effective Date" of the Agreement, which could not occur until after exhaustion of any appeals.

On March 10, 2011, the Court (1) entered a Preliminary Order Approving the Settlement Agreement; (2) scheduled a "Final Fairness Hearing" for September 15, 2011; (3) directed Class Members to submit their Proof of Claim Forms to participate in the Settlement's financial distribution by August 31, 2011.

On June 27, 2011, the Settlement Administrator mailed the Court-approved notice and claim form to 5,772,359 Class members who had repaid 6,212,081 qualifying loans.

Prior to the Fairness Hearing, 478,871 Class Members submitted claim forms to the Settlement Administrator. Only 461 opt-out requests were received and fifteen class members served objections.

On September 1, 2011, the parties jointly moved to finally approve the Settlement. Class Counsel filed a separate motion for attorneys' fees equal to 30% of the Gross Settlement Fund ($3.6 million), and reimbursement of the expenses, which WMI did not oppose pursuant to Section 3.2(A) of the Settlement Agreement. Class Counsel's original fee request represented 19.25% of the $18.7 million value of the Settlement.

On September 15, 2011, the Court (1) held a "Final Fairness Hearing"; (2) certified the proposed class for settlement purposes only; (3) overruled any objections; (4) approved the Settlement Agreement and application for attorneys' fees; (5) excluded opt-out claimants; and (6) deemed the distribution plan set forth in Article 6 to be fair and reasonable.

During the Fairness Hearing, this Court related its view that the case was not "the average class action where there is a complaint served, a few things occur, and then there is a settlement." Tr. 38. Rather, the work "was difficult," *id.* at 31, the litigation was protracted and "vicious," *id.* at 37, and class counsel's performance was "outstanding," *id.* at 40.

Nonetheless, the Court indicated that it would reduce the fee award sought by Class Counsel in order to provide the Class with the opportunity to claim against a larger share of the Settlement Proceeds. *Id.* at 26 ("THE COURT: ... I want to see the claimants, the people who paid, who were forced to pay this fee to this bank improperly, get the money."); *id.* at 36 ("THE COURT: ... The fee would be justified, except that it's being paid out of the claimants' share. And that's the problem I have with it."); *id.* at 38 (THE COURT: "In addition to which I'm going to reduce the fee from what it really should be, because the claimants are paying for it.").

On September 21, 2011, this Court granted final approval to the Settlement in a Final Order and Judgment (the "Judgment."). All objections to the Settlement were overruled. In Paragraph 13 of the Judgment, the Court approved an attorneys' fee award of $1.7 million, representing 13% of the Gross Settlement Fund and

9% of the $18.7 full value of the Settlement.

On October 6, 2011, Class Counsel filed a motion for reconsideration regarding the award of attorneys' fees. On October 11, 2011, this Court denied that motion.

Five objectors filed six notices of appeal to reverse final approval of the Settlement or fee award. Class counsel negotiated the dismissal of the appeal filed by objector Sidney Scholl. Following mandatory mediation in the Second Circuit, the appeal by objectors Christopher Batman and Jo Batman was dismissed. Class Counsel then filed a cross-appeal as to the award of attorneys' fees.

Following briefing and oral argument on the remaining objectors' appeals, on November 20, 2012, the Second Circuit affirmed final approval of the Settlement. *Cassese v. Williams,* 503 Fed.Appx. 55 (2d Cir.2012)

In February 2013, objector Brenda Komar filed a petition for a writ of *certiorari* in the United States Supreme Court. That petition was denied on April 29, 2013. *Komar v. Cassese,* —— U.S. ——, 133 S.Ct. 2023, 185 L.Ed.2d 886 (2013). In July 2013, the Settlement attained its Effective Date.

On May 31, 2013, Class Counsel's attorneys' fees were paid out of the Gross Settlement Fund per Section 3.2(A) of the Settlement Agreement.

After the Settlement's Effective Date, Class Counsel worked with WMI's counsel and the Settlement Administrator to review the submitted claim forms in preparation for distribution of the Settlement proceeds. That process culminated in submissions to this Court in August 2013 requesting adjudication as to the correct manner to administer and calculate the value of: (1) late claims; (2) unsigned claims; (3) claims annexing documents; (4) multiple claims made on a single claim form; (5) claims for less than all qualifying loans by single Class member; (6) and claims made in wrong amounts. The Court resolved those administration and claims issues in two orders and decisions dated September 3, 2013 and October 1, 2013. *See Cassese v. Wash. Mut., Inc.,* 968 F.Supp.2d 484 (E.D.N.Y.2013); *Cassese v. Wash. Mut., Inc.,* 2013 WL 5502831, 2013 U.S. Dist. LEXIS 142120 (E.D.N.Y. Oct. 1, 2013). Thereafter, Class Counsel assisted the Settlement Administrator to administer the more than 529,000 Class claims that qualified for a Settlement distribution.

Distribution of the Settlement proceeds occurred on December 27, 2013. On that date, the Settlement Administrator mailed settlement distribution checks to 529,162 class member settlement claimants. Class Counsel continued to file status reports with the Court advising of these developments. Upon expiration of the 90–day deadline to cash the Settlement checks on March 27, 2014, the Settlement Administrator reported to the parties that approximately 50,000 checks remained un-cashed, leaving a balance in the Net Settlement Fund of approximately $750,000.

On May 23, 2014, Class Counsel filed this supplemental motion for attorneys' fees for work performed subsequent to the Final Fairness Hearing. In particular, Class Counsel requests fees in the amount of the remaining funds in the Net Settlement Fund or, alternatively, $494,507, the amount of the lodestar incurred from September 1, 2011 to the present. Class Counsel does not seek further reimbursement of their out-of-pocket expenses.

Also, on May 23, 2014, Class Counsel filed a letter motion seeking approval and direction from this Court regarding an additional postcard notice, at an estimated cost of $28,557 to be paid out of the Net Settlement Fund, to be mailed to Claiming

Class Members who have failed to cash or deposit the Claim Payments that were previously mailed to them pursuant to the Settlement Agreement. WMI Liquidating Trust ("WMILT"), successor-in-interest to WMI, did not oppose this request.

On June 2, 2014, this Court approved and directed the mailing of additional post-card notice, to be paid from the Net Settlement Fund, to Claiming Class Members who received a Claim Payment, but have not yet cashed or deposited the Claim Payment. The Claiming Class Members who receive an additional postcard notice will have thirty (30) days from the date of the mailing of the postcard to cash or deposit their existing Claim Payment. After the expiration of the additional thirty (30) days, the Claim Payments will expire, consistent with Section 6.6 of the Settlement Agreement.

■ With regard to the supplemental fee application, Class Counsel notes that even if they received the entirety of the residual settlement funds, not considering the additional postcard notice, the total fee award would be approximately $2.45 Million (1.7 Million plus $750,000), which amounts to 18.8% of the Gross Settlement proceeds, a sum less than the 30% permitted by the Settlement Agreement. For this reason, Class Counsel contends that the Settlement Agreement bars WMILT's opposition to the supplemental fee application. The Court agrees.

Section 3.2(A) of the Settlement Agreement permits class counsel to seek, without opposition from WMI or its successors, attorneys' fees not exceeding 30% of the Gross Settlement Fund. That section contains no temporal limitation based on final approval of the Agreement, not does it provide that Class Counsel is limited to a single application. Section 6.6 of the Agreement simply limits the funds subject to reversion to WMI or its successors as those remaining in the Net Settlement Fund *after* the distribution of settlement proceeds to the Class and *after* the payment of attorneys' fees to Class Counsel. Stated otherwise, the residual Net Settlement Fund to which WMI or its successors is contractually entitled is exclusive of attorneys' fees, and nothing in the Settlement Agreement limits an award of such fees to pre-Settlement approval work.

■ Even if WMILT were not contractually-barred from opposing Class Counsel's supplemental fee application, courts maintain discretion to "award supplemental fees to counsel for work performed in relation to the litigation or settlement following counsel's initial fee application." *Fears v. Wilhelmina Model Agency, Inc.*, 02 CIV 4911(HB), 2007 WL 1944343, at *6 (S.D.N.Y. July 5, 2007), *vacated on other grounds*, 315 Fed.Appx. 333 (2d Cir.2009); *Olick v. Parker & Parsley Petroleum Co.*, 145 F.3d 513, 515, 516 (2d Cir.1998) (affirming district court's award of supplemental fees to class counsel for time and expenses spent defending the settlement), citing *Orchano v. Advanced Recovery, Inc.*, 107 F.3d 94, 98 (2d Cir.1997); *cf. West v. Manson*, 163 F.Supp.2d 116 (D.Conn.2001) (the plaintiff's class counsel in civil rights lawsuit awarded supplemental fees for post-settlement work in conjunction with monitoring of compliance with the consent decree).

In this case, the Court notes that Class Counsel expended considerable effort in performing professional services defending the Settlement on appeal and administering the Settlement and Distribution process. As Class Counsel has performed a benefit to the class with its additional post-settlement work, the Court will supplement its original fee award with the residual amount in the Net Settlement Fund after deducting the cost of the additional postcard notice.

During the Fairness Hearing, the Court described Class Counsel's original request for 30% of the Gross Settlement Proceeds as "justified" and "what [the fee] really should be," but for its ruling that the class should have the opportunity to claim against a larger share of the Settlement proceeds. (Tr. at 37–38.) As noted above, even taking into account this supplemental fee, the total fee awarded amounts to approximately 18.8% of the Gross Settlement Proceeds, significantly less than the potential 30% figure contemplated by the Settlement Agreement, and well within the range of reasonableness in this Circuit. *Toure v. Amerigroup Corp.*, 2012 WL 3240461, *5, 2012 U.S. Dist. LEXIS 110300, *14 (E.D.N.Y. Aug. 6, 2012) ("Class Counsel's request for one-third of the fund is reasonable and consistent with the norms of class litigation in this circuit.") (citation and internal quotation marks omitted); *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143(ENV)(RER), 2011 WL 754862, *7 (E.D.N.Y. Feb. 18, 2011) ("Class Counsel's request for 33 1/3% of the Fund is reasonable and consistent with the norms of class litigation in this circuit").

Indeed, WMI's opposition does not dispute Class Counsel's supplemental fee calculations or the reasonableness of their figures, but rather challenges Class Counsel's entitlement to a supplemental fee in the first instance. However, as previously noted, nothing in the Settlement Agreement forecloses such a fee award.

To be sure, the supplemental fee award may be a detriment to WMILT's creditors to the bankruptcy estate. However, WMILT fails to cite any legal authority where, under these circumstances, the interests of those creditors take precedence over those of Plaintiffs and Class Counsel in this type of situation.

For the foregoing reasons, the Court grants Class Counsel's motion for a supplemental fee award in the amount of the residual settlement proceeds remaining in the Net Settlement Fund, namely, the sum of $750,000 less the cost of the additional postcard notice, $28,557, or the net sum of $721,443.

**SO ORDERED.**